1  **KALIELGOLD PLLC**
   Jeffrey D. Kaliel (SBN 238293)
2  jkaliel@kalielpllc.com
   1100 15th Street NW, 4th Floor
3  Washington, D.C. 20005
4  Telephone: (202) 350-4783

5  **KALIELGOLD PLLC**
   Sophia G. Gold (SBN 307971)
6  sgold@kalielgold.com
   950 Gilman Street, Suite 200
7  Berkeley, CA 94710
8  Telephone: (202) 350-4783

9  **EDELSBERG LAW, P.A.**
   Scott Edelsberg, Esq. (SBN 330090)
10 scott@edelsberglaw.com
   20900 NE 30th Ave, Ste. 417
11 Aventura, FL 33180
12 Tel: 305-975-3320
   Fax: 786-623-0915
13
   *Attorneys for Plaintiff and the Putative Class*
14

15                     **IN THE UNITED STATES DISTRICT COURT**
16
                       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17

18

19 | **FELIPE VIDAURRE**, individually, and on | Case No.: |
20 | behalf of all others similarly situated, | |
   | | **CLASS ACTION COMPLAINT** |
21 | Plaintiff, | |
22 | v. | **JURY TRIAL DEMANDED** |
23 | **PAYPAL, INC.**, | |
24 | Defendant. | |
25

26

27

28

Plaintiff Felipe Vidaurre individually and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Defendant PayPal, Inc. ("PayPal") and alleges as follows:

**INTRODUCTION**

1. This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated PayPal customers who have been deceived into using PayPal's buy now, pay later service by the company's misrepresentations and omissions, in marketing materials, regarding the true operation and risks of the service. These risks include the real and repeated risk of multiple insufficient funds fees ("NSF fees") or overdraft fees imposed by users' banks as a result of automated PayPal transfers from consumers' checking accounts.

2. PayPal's "Pay in 4" service specifically targets poor consumers and those struggling to make ends meet on a week-to-week basis. This group is its core constituency.

3. To that group, PayPal purports to offer a solution to cash-strapped consumers: PayPal prominently markets Pay in 4 as a service that allows users to pay for purchases at a later date, with no interest, no fees and no hassle. These representations are false. In fact, there are huge, undisclosed fees and interest associated with using the service.

4. PayPal's services thus cause unsuspecting consumers like Plaintiff to incur significant overdraft and NSF fees on their linked bank accounts.

5. Unfortunately, PayPal's operation, along with its deceptive and incomplete marketing materials, means that users like Plaintiff end up paying huge amounts of fees and interest, which PayPal falsely assures users they will not receive.

6. In its rush to tout itself as convenient, simple, automatic, and free, PayPal does not disclose that overdraft and NSF fees are a likely and devastating consequence of the use of its service. No reasonable consumer would run this risk.

7. This massive risk is known to PayPal but is omitted from all of its marketing.

8. Worse, PayPal exacerbates the overdraft and NSF fee risk associated with service by using undisclosed processing choices that result in even _more_ bank fees than users would

otherwise incur, including repeatedly reprocessing debits when it knows users' checking accounts are already negative.

9. As a result, Plaintiff incurred *three separate NSF Fees*—almost $90—on a single repayment to PayPal for his small-dollar purchase.

10. Had Plaintiff and the Class members known of the true operation and risks of the PayPal Pay in 4 service, they would not have used the PayPal service.

11. Plaintiff and the Class members have been injured by PayPal's practices. Plaintiff brings this action on behalf of himself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent PayPal from continuing to engage in its illegal practices as described herein.

## PARTIES

12. Plaintiff Felipe Vidaurre is a citizen and resident of Miami, Florida

13. Defendant PayPal, Inc. is a Delaware corporation with its principal place of business in San Jose, California.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant. The number of members of the proposed Class in aggregate exceeds 100 users. 28 U.S.C. § 1332(d)(5)(B).

15. This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

///

**FACTUAL ALLEGATIONS**

**A.     Overview**

17. The concept of "buy now, pay later" has existed since the birth of credit cards. PayPal and other companies like Klarna, Afterpay, and Affirm have expanded this concept to offer point-of-sale loans for online and in-store purchases and through their mobile apps, allowing users to avoid paying in full for products at hundreds of online and in-person stores by breaking up payments into four installments—allowing users to pay off a purchase over the next few months.

18. According to the PayPal website, app, and advertisements online including on social media, the service is completely free, with no interest or hidden fees.

19. Here's how it works. At checkout at an in-person store, or online, a user is offered a PayPal Pay in 4 option as an alternative to other, traditional methods of payment. During that checkout experience, PayPal offers short marketing messages regarding its supposedly fee and risk-free service.

20. If a user chooses to use PayPal Pay in 4, she provides basic personal details like name, date of birth, address, and debit card. She then is provided specific payment plan details.

21. For example, if the total purchase is $50, PayPal breaks that total into four payments of $12.50, with the first installment due at checkout and the remaining three deducted every two weeks. The user's bank account will be charged for the first payment and automatically charged every two weeks until the balance is paid in full.

22. The whole process takes a few seconds—and at no time during that process does PayPal warn potential users of the true risks of using its service. To the contrary, during the checkout and sign up processes, PayPal repeatedly touts itself as a free service—without fees, interest, or other catches.

23. The PayPal interface and marketing representation promise:

///

///

# Buy now, pay later with Pay in 4

Check out at millions of online stores and split your purchase into 4 interest-free payments with no late fees. There's no impact on your credit score and it's backed by PayPal.

24. PayPal also touts itself as offering "**4 interest-free payments**….Pay in 4 with PayPal through our app, with integrated brands, or anywhere Visa is accepted."

25. It also states:

**No interest. No catch.**
Buy now, pay later is an alternative to credit and gives you the flexibility to shop what you want, when you want, without breaking the bank. When you split the cost of your purchase into 4 smaller payments with PayPal, **you'll never pay any interest. Ever.**

26. But there are often huge "late fees" and significant interest, albeit not assessed by PayPal, in the form of overdraft and NSF fees assessed by banks processing Pay in 4 payments.

27. Overdraft fees, which banks charge when they pay small-dollar purchases into an insufficient account balance, are a highly profitable part of the banking sector that exclusively targets the very poor. According to a 2017 study by the Consumer Financial Protection Bureau, 5 percent of all bank accounts have over 20 overdrafts a year, which produce 63.3 percent of all overdraft fees paid by consumers. Another 4.2 percent of bank accounts have over ten overdrafts a year and make up more than 15 percent of fees paid by consumers.

28. This is the same group of consumers that PayPal targets with its marketing: consumers living paycheck to paycheck. As a result, PayPal knew or should have know that such users were at extreme risk of overdraft and NSF fees when using the PayPal service.

29. When a bank pays an overdraft, it makes a loan to its accountholder in the amount of the overdraft. The overdraft fee is a payment the accountholder makes for the extension of credit for the overdrawn amount.

30. A 2008 Federal Deposit Insurance Corporation (FDIC) study showed that overdraft fees carry an effective APR in excess of 3,500 percent.

31. Alternatively, when banks do not make payments, but rather return them unpaid, they charge the same $28-$39 fee, but term it an "insufficient funds" or "NSF Fee." In that circumstance, the accountholder is assessed the fee even though her payment is not paid.

32. Worse, and as occurred with Plaintiff, PayPal repeatedly re-processes payments that are not successful on the first attempt—*causing multiple NSF Fees on the same repayment*.

33. In short, the entire premise of PayPal Pay in 4 is to provide immediate access to goods and services and avoid bank fees and interest charges. That is why consumers are shocked to discover that PayPal causes significant bank fees and/or interest charges.

34. Using PayPal's Pay in 4 service causes unsuspecting consumers like Plaintiff to incur massive fees on their linked bank accounts.

35. PayPal misrepresents (and omits facts about) the true nature, benefits, and risks of its service, functioning of which means that users are at extreme and undisclosed risk of expensive bank fees when using PayPal. Had Plaintiff been adequately informed of these risks, he would not have used PayPal Pay in 4.

36. As alleged herein, Plaintiff had no idea small, automatic PayPal repayments could cause multiple $29-each NSF fees from his bank.

**B.    Plaintiff's Experience**

37. When Plaintiff signed up for PayPal Pay in 4 and was induced to provide PayPal with his highly sensitive banking information, he was not aware that PayPal's service had a significant "catch" and that significant penalties, including "interest" and/or "late fees," could result.

38. For example, in October 2021, Plaintiff made a purchase using PayPal Pay in 4.

39. On December 15, 2021, PayPal repeatedly attempted to make the same payment deduction from his checking account at Baxter Credit Union, as a partial repayment of that purchase. The first, second, third attempted deductions of that same partial repayment each incurred a $29 NSF Fee from Baxter Credit Union—for a total of $87 in fees on just one repayment.

40. Throughout December 2021, PayPal incessantly reprocessed payment attempts from his checking account at Baxter Credit Union, as a partial repayment of that purchase, a total of *twelve* times. Overall, PayPal's deceptive service ended up costing Plaintiff a whopping $348 in bank fees.

### C.    PayPal's Deceptive Marketing

41. In marketing and promotions, PayPal describes its service as simple, convenient, and easy—a no-fee, no-interest way for consumers to receive their purchases before they have money to pay for them.

42. PayPal's marketing never warns consumers of the extreme and crushing NSF and overdraft fee risk of using the service.

43. PayPal conceals from users the punishing risk of NSF and overdraft fees on small dollar PayPal repayments.

44. PayPal's marketing materials—including within the app, in app stores, and on PayPal's website—never disclose these risks and material facts, instead luring consumers to sign up for and use the service with promises of ease, convenience, and fee/interest avoidance.

45. PayPal knows that its service is likely to cause its low-income users to incur large bank fees.

46. PayPal's representations—which all users view during the sign-up process—are false and contain material omissions.

47. PayPal misrepresents the true nature, benefits and risks of the service, which targets users with an extreme and undisclosed risk of PayPal triggering expensive, earnings-depleting bank fees. Plaintiff would not have used PayPal if he had been adequately informed of the risks of bank fees. As alleged herein, Plaintiff had no idea small, automatic PayPal repayments could cause bank fees from their bank; and he had no idea PayPal would repeatedly reprocess transactions when his account had insufficient funds.

48. PayPal's marketing never discloses the most devastating risk of using the service— that days of earnings can be wiped out by bank fees associated with using the service.

# **CLASS ALLEGATIONS**

49. Plaintiff brings this action individually and as representatives of all those similarly situated, on behalf of the below-defined Class (the "Class"):

> All persons who used the PayPal Pay in 4 Service and incurred an overdraft or NSF Fee as a result of a PayPal repayment deduction.

50. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

51. This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52. **Numerosity:** The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Class is unknown to Plaintiff at this time; however, it is estimated that the Class number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

53. **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

    a) Whether PayPal's representations and omissions about its service are false, misleading, deceptive, or likely to deceive;

    b) Whether PayPal failed to disclose the NSF and overdraft fee risks of using its service;

    c) Whether Plaintiff and the Class members were damaged by PayPal's conduct;

    d) Whether PayPal's actions or inactions violated the consumer protection statute invoked herein; and

e) Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

54. **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class. The common questions of law set forth above are numerous and substantial and stem from PayPal's uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

55. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were similarly injured through PayPal's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Class, were deprived of monies that rightfully belonged to them. Further, there are no defenses available to PayPal that are unique to Plaintiff.

56. **Adequacy of Representation:** Plaintiff are adequate class representatives because they are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

57. **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, PayPal would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or

varying verdicts or adjudications with respect to the individual Class members against PayPal, and which would establish potentially incompatible standards of conduct for PayPal and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

**FIRST CAUSE OF ACTION**
**Violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. § 501.201,** *et seq***.**

58. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

59. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. The stated purpose of the FDUTPA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

60. Plaintiff and members of the Class are "consumers" as defined by Fla. Stat. § 501.203(7).

61. PayPal engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8) with its Pay in 4 service offered through its website and mobile app.

62. As described herein, PayPal's misrepresentations that it provides fee and risk-free repayment services through its website and mobile app constitutes an unconscionable, unfair and/or deceptive act in trade or commerce in violation of Fla. Stat. § 501.201.

63. PayPal's deceptive concealment of the material risks of incurring expensive bank fees when using its Pay in 4 repayment service is a practice that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.

64. As a direct and proximate result of PayPal's unfair, unconscionable, and/or deceptive acts or practices, Plaintiff and members of the Class have been harmed and suffered actual damages.

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

65. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

66. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

67. PayPal's deceptive conduct related to material omissions and/or material misrepresentations that it provides risk-free repayment service through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

68. The UCL imposes strict liability. Plaintiff need not prove that PayPal intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

69. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

70. Defendant's practices as described herein are (a) immoral, unethical, oppressive, and/or unscrupulous and violate established public policy as recognized by, *inter alia*, causing injury to consumers which outweigh any purported benefits or utility.

71. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

72. Defendant's practices, as described herein, constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive

reasonable consumers, who do not expect that they can occur expensive bank fees—and sometimes, multiple bank fees—for using PayPal's service. On the media on which Defendant communicated to consumer as they were making a purchase decision, Defendant concealed the material fact that the cost to use the Pay in 4 service can far exceed the "free" price represented.

73. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

74. Among other statutes, laws, and/or regulations, Defendant's acts and practices violate the following statutes, laws, and/or regulations:

(a) Violating Cal. Civ. Code § 1750, *et seq.*;

(b) Engaging in conduct in which the gravity of harm to Plaintiff and the Class outweighs the utility of the Defendant's conduct; and/or

(c) Engaging in acts and/or practices and/or omissions that are immoral, unethical, oppressive, and/or unscrupulous and causes injury to consumers which outweigh its benefits.

75. PayPal committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website and mobile app that the true risks and operation of its service.

76. Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

77. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

78. PayPal's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

79. Plaintiff relied on Defendant's misrepresentations.

80. Had Plaintiff known the true risks of using the service, he would have chosen another method to purchase the item with PayPal or purchase the item with another provider.

81. As a direct and proximate result of PayPal's unfair, fraudulent, and/or unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into making purchases with the Pay in 4 service.

82. As a result of its unfair, fraudulent, and unlawful conduct, PayPal has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

### THIRD CAUSE OF ACTION
### Violation of California's False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, *et seq*.

83. Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

84. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

85. Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

86. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

87. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seeks an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting the true risks and operation of its services.

88. Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

89. Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

    A.    Certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Class, and appointing counsel for Plaintiff as lead counsel for the respective Class;

    B.    Declaring that PayPal's policies and practices as described herein constitute a violation of state consumer protection statutes;

    C.    Enjoining PayPal from the wrongful conduct as described herein;

    D.    Awarding restitution of all fees at issue paid to PayPal by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

    E.    Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

    F.    Awarding actual and/or compensatory damages in an amount according to proof;

    G.    Punitive and exemplary damages;

    H.    Awarding pre-judgment interest at the maximum rate permitted by applicable law;

      I.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

      J.      Awarding such other further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: March 1, 2022                      Respectfully submitted,

                                                    **KALIELGOLD PLLC**

                                   By: */s/ Jeffrey D. Kaliel*
                                        Jeffrey D. Kaliel (SBN 238293)
                                        jkaliel@kalielpllc.com
                                        1100 15th Street NW, 4th Floor
                                        Washington, D.C. 20005
                                        Telephone: (202) 350-4783

                                        Sophia G. Gold (SBN 307971)
                                        sgold@kalielgold.com
                                        **KALIELGOLD PLLC**
                                        950 Gilman Street, Suite 200
                                        Berkeley, CA 94710
                                        Telephone: (202) 350-4783

                                        Scott Edelsberg (SBN 330090)
                                        scott@edelsberglaw.com
                                        **EDELSBERG LAW, P.A.**
                                        20900 NE 30th Ave., Ste. 417
                                        Aventua, FL 33180
                                        Tel: 305-975-3320
                                        Fax: 786-623-0915

                                        *Attorneys for Plaintiff and the Putative Class*